Nathaniel T. Helman, J.
This is an article 78 proceeding in which the petitioner seeks a judgment directing the Bureau *230 of Records and Statistics of the New York City Department of Health to furnish a new birth certificate designating the petitioner as' a female.
The petitioner was born a male in 1933, and presumably functioned as such during childhood, service in the armed forces, and as a father of a child, of his marriage which terminated in divorce in 1971. Medical affidavits accompanying the petition reveal that in April, 1970, the petitioner underwent surgery removing the male sex organs and creating a functional female primary sex organ. ‘ This surgery was supplemented by breast implants in June, 1970. The sum effect of these operations rendered the petitioner' physiologically and psychologically a female, termed medically a transsexual. In order to complete a change of identity from male to female, the petitioner has assumed a female given name, and has effected a change of name and sex upon a baptismal certificate, and upon the certificate of discharge from the United States Navy.
Petitioner now seeks a change of sex upon petitioner’s birth certificate. The respondent bureau has issued a new certificate changing only the first name of petitioner to “ Deborah ” and has omitted any identity of sex. The petitioner contends that the refusal by the respondents to provide identity as a female on the newly issued certificate is arbitrary and capricious and constitutes an abuse of discretion.
The respondents contend that a new birth certificate may be obtained to correct an existing record only under certain circumstances, none of which are encompassed by the instant application, and that there is no requirement for a change of sex on a birth record.
The authority for the respondent’s rule making is derived from the Public Health Law (§ 4100) and the New York City Charter (§ 551 et seq.; see, now, § 1700 et seq.) which give broad powers to the Health Department. Thereunder, the respondent department promulgated section 207.05 (subd. [a], par. [5]) of the New York City Health Code, which provides: ‘ ‘ A new birth certificate shall be filed when: * * * The name of the person has been changed pursuant to court order and proof satisfactory to the Department has been submitted that such person has undergone convertive surgery ”.
There is no issue raised regarding petitioner’s fulfillment of the requisites of the statute. The essential question is whether the rule adopted by the department has a rational basis and if so, was it improperly applied to the petitioner.
*231 The rationale for the rule is found in a report by the Committee on Public Health of the New York Academy of Medicine entitled Change of Sex on Birth Certificates for Transsexuals approved on October 4, 1965. The report embodies a study together with recommendations made at the request of the Board of Health of the City of New York with respect to modifications and amendments of birth certificates for transsexuals. The report reveals that the male-to-female transsexual, such as here, is anatomically and chromosomally a male who is deeply disturbed in his gender orientation and role. He has an overpowering desire to be a woman; to acquire her contour, to function sexually, and to be accepted socially and legally as a female. The male bodily configuration and genitalia are discordant factors which the transsexual strives to overcome through hormone treatment, and sometimes, by plastic surgery including the removal of the male genitalia and fashioning artificial female genitalia. Nonetheless, this abnormal individual, advises the report, is genetically a male as shown by chromosome and cell-chromatin studies, and the disorder manifests itself in various types of abberrations from minor to true hermaphroditism, which is a rare condition in humans characterized by the coexistence of both ovarian and testicular tissue.
The committee concluded, after careful consideration of the many aspects of change of sex on the birth certificate of a transsexual, that:
1. male-to-female transsexuals are still chromosomally males while ostensibly females;
2. it is questionable whether laws and records such as the birth certificate should be changed and thereby used as a means to help psychologically ill persons in their social adaptation. The committee is therefore opposed to a change of sex on birth certificates in transsexualism.
The committee would point out that there are other ways to help these persons by: relief by court order to change name and sex; or amendment of the birth certificate by showing the new sex but still showing the original sex and the change of sex. The desire of concealment of a change of sex by the transsexual is outweighed by the public interest for protection against fraud.
Thereafter, by resolution adopted December 16, 1971, the Board of Health amended the New York City Health Code by adding paragraph [5] to subdivision [a] of section 207.05, in an apparent effort to accommodate transsexuals seeking *232 a new birth certificate. However, the amendment in no way dictates that a new certificate shall indicate the sex of the applicant.
The minutes of the seven-member Board of Health reflect that the amendment to section 207.05 was adopted unanimously with the specific intent of omitting sex from the new certificate, and with full cognizance that 11 States now record the new sex on the birth certificate. The board considered amongst other matters, a position letter from the New York Civil Liberties Union which sought the inclusion of sex information. The minutes further reveal that the board was of the opinion that surgery for the transsexual is an experimental form of psychotherapy by which mutilating surgery is conducted on a person with the intent of setting his mind at ease, and that nonetheless, does not change the body cells governing sexuality. In the words of one of the medical members of the board, ‘‘1 would think that it would be unsound, if, in fact, there were encouragement to the broader use of this means of resolving a person’s unhappy mental state ’ ’.
Since the power of regulating birth certificates lies solely within the jurisdiction of the Board of Health, and the rules thereon are shown to have a rational basis, the critical issue is whether it acted arbitrarily, capriciously, or in an otherwise illegal manner in the implementation of those rules. The petitioner must establish that the evidence submitted shows the true facts and that an error was made at the time of preparing and filing of a certificate by the board. (Matter of Anonymous v. Weiner, 50 Misc 2d 380.) The petitioner has clearly failed to establish that evidence. Moreover, the court, as the overseer of the legality of administrative action, may not arrogate to itself the power to fashion a different determination where, as here, the respondent board followed its own rules and gave careful consideration to each aspect of the problem. Indeed, the nature of the problem posed initially to the Board of Health and now to the court requires a specialized training and skill for which the board, and not the court, is uniquely equipped. If the board has seen fit to issue a birth certificate for a transsexual, without disclosure of gender, such a determination is indeed well supported.
Accordingly, the petition is denied and the proceeding is dismissed.