Edward J. Greenfield, J.
Questions once regarded as simple are now recognized as matters of considerable complexity as we analyze more closely that which was once taken for granted. It used to be that one could make an instant determination of such matters as life or death — is a body living or not. Similarly, with respect to gender, a person was either male or female, and no three ways about it. These simplistic conclusions, under intensive examination have come to be challenged, and it is now recognized that there are a series of determinants which must be reviewed to answer these formerly simple questions.
This case raises the question of the determination of gender. This court is asked to render a judicial declaration as to the sexual identity of an individual. Alternatively, the Bureau of Vital Records is charged as being arbitrary and unreasonable in abstaining from taking a position. The facts are these:
Petitioner was born in New York City in 1945. A birth certificate at that time designated the sex as male. Petitioner was brought up as a male and was married, but evidently *376 throughout life had a problem of gender identity. Finally, in 1975, after extensive psychological, psychiatric and endocrinological evaluation and workout, sex reassignment surgery was performed and petitioner became anatomically, as well as psychologically, a woman. Petitioner’s name was changed by court order in Canada to a female name and a new passport was issued by the United States Department of State bearing the newly assumed female name and a photograph of an attractive young woman. On May 28, 1975, petitioner requested the respondent, who is charged by the Administrative Code of the City of New York with maintaining birth records and issuing certificates reflecting such change, to issue a corrected birth certificate to reflect petitioner’s female name and sex. A new certificate was, in fact, issued on March 2, 1976 identifying petitioner by petitioner’s female name, but in accordance with departmental practice, bearing no statement as to sex. In further correspondence, petitioner insisted that the birth certificate specify female sex, but these demands have been rejected.
An order is now sought in an article 78 proceeding directing Irving Mellon, the Director of the Bureau of Vital Records of the New York City Department of Health, to issue a birth certificate either showing petitioner’s sex as female or showing the original sex and change of sex. In the alternative, petitioner seeks a declaratory judgment determining petitioner’s sex to be female and directing that such a determination be attached to and filed with the birth records.
Insofar as petitioner seeks a declaratory judgment establishing female sexual identity, the application must be dismissed as presenting a nonjusticiable controversy. It is basic that courts will not make a declaratory judgment in a vacuum and that the question presented for determination must be determinative of an actual controversy between adverse parties. (Goldsmith v Goldsmith, 25 AD2d 515, affd 19 NY2d 710, mod 19 NY2d 939, cert den 389 US 831.) In fact, respondent takes no position on the request for declaratory relief, since it is not affected by that branch of the relief sought. The court, in effect, is being asked to render a judicial opinion in the absence of a genuine justiciable controversy which will determine the respective obligations of contesting parties. If the purpose of a declaratory judgment is to enable a party who is placed in an uncertain position to invoke the aid of the court to obtain a declaration of legal rights before being exposed to *377 loss or damage and before any change of position, that purpose would not be served where petitioner has already irrevocably changed positions and there is no dispute as to obligations. Possible future controversies as to petitioner’s sexual identity can be envisioned, but they are not here presented.
The real controversy here presented is whether respondent acted arbitrarily in refusing petitioner’s request to show the sex on the birth certificate as "female”. Respondent contends not only that he acted with propriety under a rational rule adopted by the Department of Health, but that the petitioner’s application under article 78 is untimely as not having been made within four months after the disputed birth certificate was issued on March 2, 1976. This court must deal with the question thus presented under article 78 as a matter of administrative law — whether the administrative determination of the respondent was arbitrary, capricious and without rational basis or whether reasonable grounds existed for acting as it did. If reasonable grounds are present, the court, no matter what its opinion, cannot substitute its own for the administrative determination. However fascinating the information presented by psychologists, surgeons, endocrinologists and clergymen may be, the court will not pick and choose one set of opinions over another if rational choices are equally available to the administrative body.
Petitioner is denominated as a "classic primary transsexual”. That is, although born with a male body, psychologically there was a feminine identification which ultimately became so strong as to call for sex reassignment surgery. This court recognizes that sexual gender is not merely a matter of anatomy. Other determinants include psychological identity, acceptability by others, chromosomal makeup, reproductive capacity and endocrine levels. (See Benjamin, The Transsexual Phenomenon, pp 3-10.) Basing determination of gender upon any one indicator might well lead to an unwarranted conclusion. (See, e.g., Richards v United States Tennis Assn., NYLJ, Aug. 22, 1977, p 4, col 4.)
Psychologically the petitioner is female; the body structure is female; endocrine balance is now female; petitioner is now accepted socially as a female; reproductive organs are neither male nor female — the testes having been removed and ovaries never having been present. Chromosomally, petitioner probably manifests male chromosome characteristics. In 1965, the Committee on Public Health of the New York Academy of *378 Medicine conducted a study for the respondent and concluded that while male to female transsexuals were ostensibly females, they were still chromosomally males. It questioned whether birth certificates should be changed "as a means to help psychologically ill persons in their social adaptation”. It also put much weight on "the public interest in protection against fraud”. On October 13, 1965, respondent promulgated a resolution providing that the Health Code not be amended to call for a change of sex on birth certificates in cases of transsexuals. Respondent then went on record as declaring that sex can be changed where it had been erroneously set forth, but as it was a chronicle of events it could not be altered by later actions. It was upon this basis that Justice Sarafite in 1966 decided, in Matter of Anonymous v Weiner (50 Misc 2d 380) to dismiss an article 78 proceeding requesting a change in sex on a birth certificate.
Article 207 of title V of the New York City Health Code, which originally provided for amendment of a birth certificate only upon a showing of erroneous entry or upon a court ordered change of name, was amended in 1971 to provide for a new birth certificate when there has been a court ordered name change and proof satisfactory to the Department of Health that the person involved had undergone "convertive surgery”. Pursuant to that section, respondent then began issuing amended birth certificates for transsexuals showing the female name, where designated by court order, but omitting any reference to sex one way or the other. That practice was challenged in the Matter of Hartin v Director of Bur. of Records & Statistics, Dept. of Health of City of N. Y. (75 Misc 2d 229) where Mr. Justice Herman ruled that the respondent’s practices had a rational basis and that the power of regulating birth certificates was solely within its jurisdiction. Petitioner urges that a more enlightened view of the medical and psychological evidence would compel a different result today.
The 1965 findings of the Committee on Public Health of the New York Academy of Medicine may well be open to question in certain of its aspects. "Psychologically ill persons” may not be the most appropriate description for labeling those tortured souls who possess the psyche of a woman in the body of a man, but maladjustment there certainly is. The court will today regard "protection of the public interest against fraud” as being of virtually no significance, since it is dubious that *379 any one would go through such drastic procedures as sex reassignment surgery for the purpose of deceiving creditors or avoiding the draft. It has been judicially determined that chromosomal or genetic sex is not the determinative factor in deciding whether a person is male or female, (see Richards v United States Tennis Assn., supra.) The fact is that no single characteristic is determinative.
For that very reason, it would be impossible for this or any other court to declare that the refusal of the respondent to make a determination one way or the other and to issue a certificate carrying a change of gender as well as a change of name is irrational, arbitrary and without basis. Birth certificates are official documents and are admissible in evidence as such. Subdivision (3) of section 4103 of the Public Health Law provides: "A certified copy of the record of a birth * * * or a certificate of registration of birth, when properly certified by the commissioner or persons authorized to act for him, shall be prima facie evidence in all courts and places of the facts therein stated.” (See 5 Bender’s NY Evidence, § 451.09.) The birth certificate is nothing in and of itself but a record, a statistic, a source. In cases such as those of transsexuals which are so beclouded by ambiguity, an administrative body such as the respondent may properly decline to take a position which will be used as evidence in other proceedings to establish jural relationships or rights and obligations. The fact of sex may be crucial in school admissions, in vocational or recreational opportunities, in military service, in connection with insurance and pensions, or upon an application for a marriage certificate. The Bureau of Vital Records can appropriately decline to make a determination which would have an effect upon possible future controversies. It is being asked to make a ruling ex parte. If the facts are susceptible to diverse interpretation however, it is not irrational to allow those facts to be contested and established adversarially in subsequent proceedings.
Petitioner requests that if respondent is unwilling to put down the word "female” on the birth certificate it should alternatively show the original sex as male and the present sex as female. There is no compelling reason why respondent should be required to do this. While petitioner may be willing to have those facts appear on the birth certificate, it is doubtful that other transsexuals would want to have that fact so advertised. In the promulgation of a general rule, respon *380 dent may properly consider the general good and refuse to make exceptions for individual cases.
It should be noted that a direction by the court to the respondent requiring it to enter the word "female” on the birth certificate, when respondent has declined to do so, would be tantamount to this court granting the application for a declaratory judgment. The determination would be the ex parte determination of this court alone, without a thorough airing of the facts. While respondent defends its own position in abstaining from choice, it does not in fact contest any of petitioner’s contentions about the anatomic, endocrinological and genital changes which are alleged by petitioner. Respondent merely contends that its rule, taking no position, is reasonable under the circumstances.
The court concludes, as had earlier courts, that the respondent did not act arbitrarily, unreasonably or illegally in declining to designate petitioner’s sex. Nothing done by the respondent will preclude petitioner under appropriate circumstances in attempting to establish female gender when legal obligations are to be decided. In view of the foregoing, the question of the timeliness of petitioner’s application is rendered academic. The petition is denied and the proceeding is dismissed.